UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CDDM CORPORATION,

    Plaintiff,

v.

    Case No. 1:25-cv-431

    Hon. Hala Y. Jarbou

CITY OF LANSING,

    Defendant.
_____/

## OPINION

Plaintiff CDDM Corporation ("CDDM") brings this lawsuit against Defendant City of Lansing ("the City") under 42 U.S.C. § 1983 and Michigan law, alleging that the City's revocation of CDDM's liquor and cabaret licenses violated its Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection of the laws, as well as state constitutional guarantees. (Am. Compl., ECF No. 18.)  The City has moved to dismiss CDDM's amended complaint for lack of subject matter jurisdiction and failure to state a claim.  (ECF No. 21.)  For the reasons discussed below, the Court concludes that it has jurisdiction, but that CDDM has failed to state a federal claim.  Therefore, the Court will grant the motion and dismiss the case.

### I. BACKGROUND

This case relates to CDDM's operation of Centerfolds, a strip club in Lansing that also served alcohol.  At the time the relevant events occurred, CDDM possessed an annual renewable cabaret license from the City that became effective on May 14, 2024, and was set to expire on April 30, 2025.  (Am. Compl. ¶ 3.)  CDDM also possessed a liquor license from the State of Michigan that became effective November 2, 2004, and was set to expire April 30, 2026.  (*Id.* ¶ 4.)

On February 16, 2025, a patron of Centerfolds shot and killed another person inside the building. (*Id.* ¶¶ 13, 16.) Later that month, on February 28, Lansing Chief of Police Robert Backus sent a letter to the Lansing City Council requesting that CDDM lose its liquor and cabaret license due to its allegedly insufficient security measures, as evidenced by the 2025 shooting and the history of reported incidents at Centerfolds. (*Id.* ¶ 6; *see* Backus Letter, ECF No. 10-15.) The letter also stated that homicides had also occurred at Centerfolds in 2013 and 2006.[1] (Backus Letter, PageID.306.) Furthermore, Backus stated that while investigating the 2025 homicide, police had uncovered "a number of other illegal and deeply concerning activities at Centerfolds[,] to include sexual acts in exchange for money caught on camera and the appearance of multiple armed persons entering the business without any contact by security." (*Id.*, PageID.308.) CDDM denies that the sexual acts in question occurred, and alleges that it has security protocols including metal detectors and pat downs. (Am. Compl. ¶¶ 17–18.)

The City subsequently scheduled a hearing for March 25, 2025, to address the matter of Centerfolds's licenses. (Am. Compl. ¶ 6.) It sent notice of the hearing to CDDM via mail. (*Id.* ¶ 21.) Notice was sent to Harry W. Kief, the Registered Agent of CDDM, and Freddy Giordiano, in whose name the cabaret license was held. (*Id.* ¶¶ 3, 5.) CDDM concedes that "available evidence shows that [the City] timely mailed out the required notices." (*Id.* ¶ 21.) However, CDDM points to an affidavit from Brianna M. Becraft, an agent for CDDM, who attests she did not "personally receive[]" the notice letter until March 27, 2025—after the hearing had already occurred. (Becraft Aff. ¶¶ 1-2, ECF No. 1-5.) CDDM also alleges that the notice to Giordano "was not received by the recipient until after the March 25, 2025 hearing." (Am. Compl. ¶ 21.)

---

[1] CDDM alleges that the 2006 incident occurred when the company was under different ownership and management. (Am. Compl. ¶ 14.)

The hearing occurred on March 25 before Rawley Van Fossen, Director of Economic Development and Planning, who recommended that the City Council revoke CDDM's cabaret and liquor licenses. (*Id.* ¶¶ 6, 8.) CDDM did not know the hearing was taking place, and thus did not appear. (*Id.* ¶ 7.) The City Council then held a meeting on April 7, 2025, where its members voted on the matter. (*Id.* ¶ 11.) CDDM appeared at the meeting, but the City Council did not let it present evidence in favor of its position. (*Id.* ¶ 22.) Ultimately, the City Council voted to revoke CDDM's licenses, which "essentially put CDDM out of business." (*Id.* ¶ 11.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true."

3

*Parrino*, 869 F.3d at 397. The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Rule 12(b)(1) Motion to Dismiss

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Facial attacks are reviewed under the same standard as applied to a Rule 12(b)(6) motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint. *Id.* No presumption of truth applies in a "factual attack" on subject matter jurisdiction. *Id.* Factual attacks challenge the existence of jurisdiction based on facts outside the pleadings. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). When a factual attack is made, the Court has "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists[.]" *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

### III. ANALYSIS

### A. Subject-Matter Jurisdiction

This Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). CDDM raises claims under 42 U.S.C. § 1983 based on alleged violations of its Fourteenth Amendment rights. These claims plainly create federal question jurisdiction under 28 U.S.C. § 1331.

The City argues that because CDDM does not state a federal claim, the Court has no federal question jurisdiction. But the City "has confused the basic distinction between a lack of jurisdiction and a failure to state or prove a legally sufficient claim." *Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). As the Supreme Court has explained, "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because CDDM's claims are not utterly frivolous, the Court has jurisdiction over them.

### B. Failure to State a Claim

#### 1. Procedural Due Process

CDDM argues that the City deprived it of procedural due process by not providing proper notice of the March 25, 2025, hearing. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Am. XIV. "Michigan courts have held that the holder of a liquor license has a constitutionally protected [property] interest and is therefore entitled to proper proceedings prior to making decisions regarding renewal or revocation." *Wojcik v. City of Romulus*, 257 F.3d 600, 609–10 (6th Cir. 2001). Procedural due process "at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015). "To satisfy due process under the Constitution, notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for

those interested to make their appearance[.]'" *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (alteration in original) (quoting *Mullane v. Cent. Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)).

CDDM's allegations do not suggest that the City's notice violated due process. CDDM concedes that the City sent timely notice, and merely alleges that it did not receive the notice before the hearing, for reasons that it does not explain. It is unclear whether CDDM is alleging that the letters did not arrive in time, or merely that it did not *read* the letters in time. Even if CDDM did not timely receive the notice, "the point turns on reasonable efforts to provide notice, not notice actually received." *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 605 (6th Cir. 2015). Indeed, "[d]ue process does not require that a property owner receive actual notice before the government may take his property," as long as the government made reasonable efforts. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Because CDDM does not allege any defects in the City's method of providing notice, it has not stated a procedural due process claim. *See id.* ("[T]his Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient *when sent*." (emphasis added)).[2]

CDDM also contends that the City violated its own charter by not providing any mechanism to appeal its revocation of CDDM's license. The City Charter provides that "[t]he City shall provide by ordinance, for the review of decisions of City agencies under this section in any case where such review is not provided for by this Charter or by law." Lansing, Mich., City Charter § 8-101.2, *quoted in* Am. Compl. ¶ 22. It does not appear that this provision is applicable

---

[2] In fact, during the May 6, 2025, hearing before this Court on CDDM's motion for a temporary restraining order and preliminary injunction, counsel for CDDM expressly conceded that the City's notice process as to the revocation of its licenses was adequate. In that hearing, CDDM only argued that (1) the City had not even attempted to provide notice of the denial of CDDM's application for *renewal* of its license, and (2) the City had failed to notify other people about the revocation who were entitled to notice under city law. But CDDM does not raise either of those claims in its amended complaint or response to the motion to dismiss, so the Court will not consider them here.

here, as the City Council is presumably not an "agenc[y]." Regardless, the violation of a City Charter does not necessarily give rise to a procedural due process claim. *See DePiero*, 180 F.3d at 788 ("Failure of the citation to comply with state law does not, however, automatically translate into a deprivation of procedural due process under the United States Constitution."). And CDDM points to no authority supporting the principle that due process requires local governments to allow administrative appeals of the decisions of a democratically elected body. In fact, CDDM acknowledges that it can use the state courts to address any objections it has to the City Counsel's decision. (Pl.'s Br. in Opp'n 19, ECF No. 26); *cf. Bundo v. City of Walled Lake*, 238 N.W.2d 154, 163–64 (Mich. 1976) (noting that state courts can review city's decision to prevent renewal of liquor licenses). Thus, CDDM does not state a procedural due process claim.

### 2. Substantive Due Process

"Substantive due process is the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (cleaned up). "It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Id.* (internal quotation marks omitted). CDDM focuses on the shocks-the-conscience prong, which bars acts that "violate[] the decencies of civilized conduct." *Id.* at 589 (internal quotation marks omitted) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "[T]he 'shocks the conscience' standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation." *Id.* at 590.

The City's actions, as alleged by CDDM, do not remotely rise to the level of a substantive due process violation. Essentially, CDDM contends that the City had an inadequate basis to revoke

7

its licenses, and that the City Council members acted out of personal animus towards it. CDDM bases its allegations of animus on the fact that the president of the City Council, Ryan Kost, claimed in a media interview that CDDM had had many prior issues that justified revoking its licenses. (Am. Compl. ¶ 27.) Kost had also witnessed an unrelated shooting a few weeks prior to the hearing, which CDDM alleges made him biased against it. (*Id.* ¶ 28.) Nothing about these allegations suggests that the City committed an egregious act or violated basic societal norms by revoking CDDM's licenses. Thus, CDDM has failed to state a substantive due process claim.

### 3. Equal Protection

The Fourteenth Amendment also provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Am. XIV. CDDM does not allege that it is a member of a suspect or quasi-suspect class; rather, it brings a "class of one" claim, which requires alleging that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

"[G]overnmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *TriHealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005). "The [City] has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged

8

government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (cleaned up).

CDDM has not met its burden of pleading that the City's revocation of its licenses lacked a rational basis. As discussed above, CDDM's allegations about Kost's motivations do not suggest that he or the City Council acted due to animus. And the homicide that took place at Centerfolds provides a conceivable basis for the City's decision, especially given the prior incidents at the business and the allegations made by the police. Even if CDDM disputes the veracity of some of those allegations, that dispute does not mean the City could not rely on them to make its decision.

CDDM argues that the City treated it differently than similarly situated businesses, and points to various other instances where shootings occurred at Lansing businesses and the City did not revoke their licenses. (Am. Compl. ¶¶ 24–25, 30–31.) However, CDDM does not allege that these other business were relevantly similar in terms of the number of incidents, the nature of the incidents, the security protocols in place, and other factors that might have affected the City Counsel's decision. In sum, CDDM has not stated an equal protection claim against the City.

## IV. CONCLUSION

For the reasons discussed above, CDDM has failed to state a federal constitutional claim against the City.[3] Therefore, the Court will dismiss CDDM's federal claims, and decline to exercise supplemental jurisdiction over its state law claims. *See* 28 U.S.C. § 1367(c) (a court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir.

---

[3] CDDM's amended complaint also appears to raise a claim under 42 U.S.C. § 1983 for violations of the Michigan Constitution (*see* Am. Compl. 15), "but a violation of state law cannot support a cause of action under § 1983," *Otworth v. Vanderploeg*, 61 F. App'x 163, 166 (6th Cir. 2003) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)).

1996) ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").

An order and judgment will issue consistent with this Opinion.

Dated: October 2, 2025                                /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      CHIEF UNITED STATES DISTRICT JUDGE